UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GILBERT SPILLER, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 14 C 7821 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This case comes before the Court on the petition for a writ of habeas corpus filed by Petitioner Gilbert Spiller ("Spiller") pursuant to 28 U.S.C. § 2255 ("Section 2255"). For the reasons stated below, the Court denies the petition and declines to issue a certificate of appealability.

## BACKGROUND

On November 17, 2011, a federal grand jury returned an indictment against Spiller, charging him with two counts of knowingly and intentionally distributing a controlled substance (28 grams or more of a mixture and substance containing a detectable amount of cocaine base) in violation of 21 U.S.C. § 841(a)(1) (Counts I and II) and for one count of knowingly selling a firearm to a person knowing and having reasonable cause to believe that such person had been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(d)(1) (Count III). On November 11, 2011, Spiller appeared for his arraignment and pleaded

1

not guilty to all counts in the indictment.  On November 18, 2011, the Government filed a notice seeking increased punishment pursuant to 21 U.S.C. § 851 ("Section 851") because of Spiller's prior felony convictions.  On September 12, 2012, pursuant to a written plea declaration, Spiller changed his pleas as to all three counts of the indictment to guilty.  After pleading guilty, the Probation Office concluded that Spiller was a career offender as the result of two prior felony convictions for crimes of violence and applied the career offender Guidelines under § 4B1.1(b).  According to the presentence investigation report (the "PSR"), based on the career offender Guidelines and the Section 851 recidivism enhancement, Spiller's total offense level was 34 and he was placed in the criminal history category of VI.  His advisory Guideline range was 262 to 327 months in prison.

On February 27, 2013, the Court conducted a sentencing hearing.  Both parties agreed that the Guideline range was proper.  Spiller's counsel, however, argued for a below-Guideline sentence, contending that the Section 851 enhancement created an unwarranted sentencing disparity.  When the Court inquired if either Spiller of his counsel had any factual corrections to the PSR, both responded that they did not. After both sides made their presentations and Spiller addressed the Court, he was sentenced to a below-Guideline term of 240 months in prison as to Counts I and II, which was to run concurrent with a term of 120 months in prison as to Count III.

Spiller subsequently appealed his sentence to the United States Court of Appeals for the Seventh Circuit (the "Seventh Circuit"), arguing that his sentence was

procedurally unsound because the district court did not adequately consider his argument concerning the Section 851 enhancement. On October 10, 2013, Spiller's conviction was upheld on appeal. *United States v. Spiller*, 732 F.3d 767 (7th Cir. 2013). In its opinion, the Seventh Circuit listed Spiller's criminal history: Spiller was first charged in 1989 at age 13 and was found to be a delinquent for attempted criminal sexual assault. In 1995, he was convicted as an adult of two counts of aggravated battery with a firearm and one count of aggravated discharge of a firearm. He was sentenced to 20 years in prison and was released in 2004. In 2005, while on parole, Spiller was convicted of aggravated battery of a police officer. In 2006, he was convicted of possession of heroin and for possession of a controlled substance, stemming from two separate arrests in 2007.

Additionally, the Seventh Circuit in *Spiller* clearly articulated its reasoning for why it affirmed this Court's sentence:

> The district court considered Spiller's argument, but ultimately rejected it, explaining that "the nature of this defendant trumps and overrides and overwhelms the nature of the crime in this case." It stated that "[Spiller's] criminal record is so bad and so replete with conduct of violence," that a greater sentence was warranted. It explained, "It is one thing to sell crack cocaine. It is another to sell a gun that is notably intended for use to kill business competitors or to maim them and make the streets safer for the seller of the drugs and not for society." The Court imposed a below-Guidelines sentence of 240 months "in major recognition of the nature of the crime, and the crack/powder disparity," but explained that a longer sentence was necessary due to Spiller's extensive criminal history. Though the district court never explicitly addressed Spiller's § 851 argument, it did so implicitly, and performed the requisite analysis. The court provided a reasoned explanation of the 240–month sentence it imposed, which was 22 months below the recommended Guidelines range.

*Spiller*, 732 F.3d at 769-70.

On October 6, 2014, Spiller filed this timely motion for habeas corpus relief, arguing that he was denied effective assistance of counsel during pre-trial, sentencing proceedings, as well as on his direct appeal, because his counsel should have objected to the career offender enhancement during sentencing and his counsel failed to effectively analyze applicable law and its effect on Spiller's sentence.

## LEGAL STANDARD

Section 2255 allows an incarcerated prisoner to request his sentence be vacated on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[R]elief under 28 U.S.C. § 2255 is limited to an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage or justice." *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal quotation marks omitted)). An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

**DISCUSSION**

Spiller lodges his ineffective assistance of counsel claims against the same attorney he had for both his sentencing and his direct appeal. In Ground One of his petition, Spiller argues that his counsel was ineffective because she failed to object to his classification as a career offender at sentencing. Spiller claims that at the time of sentencing, he informed his counsel that his "prior conviction for aggravated battery was non-violent and he needed to object to it being used to enhance him." Without the career offender enhancement, Spiller contends that he would have been subject to a dramatically lower sentence and if his counsel objected to such, the Court would have not factored it in his sentence. As for Ground Two, Spiller argues that his counsel failed to effectively analyze applicable law and its effect on his sentence.

Claims of ineffective assistance of counsel are reviewed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this test, Spiller must show both: (i) that counsel's performance fell below an objective standard of reasonableness under the circumstances; and (ii) that the deficient performance prejudiced him. *Id.* at 688-94. To establish prejudice, Spiller must prove there is a reasonable probability the proceeding would have had a different result but for the errors of counsel. *Id.* at 694. If Spiller fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See Strickland*, 466 U.S. at 697 ("In particular, a court need not determine whether

counsel's performance was deficient before examining the prejudice suffered by the defendant....").

A district court's "review of the attorney's performance is 'highly deferential' and reflects 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (citation omitted); *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004) ("Defense counsel is 'strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment.' ") (internal citation omitted).

Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel established in *Strickland v. Washington*, 466 U.S. 668 (1984). As the Supreme Court has noted, the hallmark of effective appellate advocacy is to winnow out weaker arguments on appeal and focus on the issues more likely to prevail. *Smith v. Murray*, 477 U.S. 527, 536 (1986). Performance is deemed insufficient when counsel omits a "significant and obvious issue" without a legitimate strategic reason for doing so. *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996).

**I. Ground One: Career Offender Designation**

In Ground One, Spiller argues that his counsel was ineffective when she failed to object, during his sentencing hearing, to the career offender designation "based on a non-qualifying Illinois aggravated battery" conviction and for failure to raise this issue on direct appeal. Spiller claims that the Court improperly utilized his conviction for aggravated battery under Illinois law (720 ILCS 5/12-4B) because it was a non-violent felony under the Illinois battery statute for " 'insulting and provoking' nature." Spiller cites to a letter dated July 13, 2013, where he brings this same issue regarding his 2005 conviction to his counsel's attention and urges his counsel to challenge this on direct appeal. Spiller contends that "[n]o competent attorney would've failed to object to an unwarranted sentencing enhancement which erroneously increased his [] sentence" and without the career offender enhancement, his sentence would have been dramatically lower. He also requested during his direct appeal for his counsel to incorporate *Descamps v. United States*, where the Supreme Court held that courts may not apply the modified categorical approach under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), when the defendant's underlying crime of conviction had a single, indivisible set of elements. 133 S.Ct. 2276, 2283–93 (2013). The Supreme Court ruled on *Descamps* after Spiller was sentenced.

The Court must assess whether Spiller's counsel objected to the career offender enhancement both during his sentencing and on appeal to determine the effectiveness of Spiller's representation. After reviewing the sentencing transcript, Spiller's

7

counsel goes into much detail about why the Court should use its discretion when applying Section 851, which she argued affected Spiller's mandatory minimum and the Guideline range. With respect to the Guideline range, Spiller's counsel specifically stated that "[w]e have no objection to the math. We, obviously, don't agree with it, but we have no objection to the math." Rather, Spiller's counsel disagreement was with the crack to powder disparity. The Government acknowledged that the defense "takes issue with the Career Offender provision" and noted that the Court "is not bound by the Career Offender provision . . .". Once both sides presented their arguments, the Court found that his "prior record is what is front and center" and gave Spiller less than the low end of the Guideline range "in a major recognition of the nature of the crime, and the crack/powder disparity."

A defendant is a career offender if the following criteria under U.S.S.G. § 4B1.1(a) are met:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). A "crime of violence" is defined as "any offense under federal or state law" that "(1) has an element the use, attempted use, or threatened use of physical force against the person of another; or (2) is burglary of a dwelling arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another." U.S.S.G. § 4B1.2(a).

In the instant matter, the first two criteria under U.S.S.G. § 4B1.1(a) are clearly satisfied because Spiller was 35 years old at the time he committed the offenses of his conviction, Counts I and II. His 1995 conviction for two felony counts of aggravated discharge of a firearm qualifies as one of his prior violent felonies. The only prior felony conviction Lambert presently claims is a non-violent offense is his May 13, 2005 conviction of aggravated battery of a peace officer.

At the time of Spiller's 2005 conviction, he was convicted of violating 720 ILCS 5/12-4(b)(6) (2005), which has since been recodified as 720 ILCS 5/12-3.05(d)(4). Under Illinois law, aggravated battery can be committed either by causing great bodily harm or by performing a battery in the presence of a listed aggravating factor. 720 ILCS 5/12-3.05. Batteries involving "physical contact of an insulting or provoking nature" under 720 ILCS 5/12-3(a)(2) have been held by the Seventh Circuit as non-violent crimes. *See United States v. Johnson*, 365 Fed. Appx. 3, 5 (7th Cir. 2010).

When assessing if a prior conviction is a crime of violence for purposes of the career offender enhancement, a sentencing court is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *United States v. McGee*, 408 F.3d 966, 988 (7th Cir. 2005) (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)). When a statute, such as the Illinois battery statute, covers more than one offense and is deemed to be "divisible," the

sentencing court may consider material other than the statute itself, including the terms of the charging document. *United States v. Woods*, 576 F.3d 400, 404-05 (7th Cir. 2009); *see also Descamps*, 133 S.Ct. at 2281. This inquiry cannot, however, delve into "the particular facts underlying the defendant's conviction." *Woods*, 576 F.3d at 404 (citing *Taylor v. United States*, 95 U.S. 575, 600 (1990)).

Spiller's charging document for his 2005 aggravated battery conviction alleged the following:

> Gilbert Spiller committed the offense of aggravated battery of a police officer in that he, in committing a battery, other than by the discharge of a firearm, knowingly or intentionally caused bodily harm to Lionel Piper, to wit: Gilbert Spiller struck Lionel Piper about the body with a vehicle knowing Lionel Piper to be a peace officer, to wit: Chicago Police Department, while Lionel Piper was engaged in the execution of his official duties, in violation of Chapter 720 Act 5 Section 12-4(B)(6) of the Illinois Compiled Statutes 1992, as amended and contrary to the Statute and against the peace and dignity of the same People of the State of Illinois.

Spiller pleaded guilty to Count 1, which charged him with knowingly or intentionally causing bodily harm to a peace officer. Spiller was charged in the alternative with aggravated battery on a peace officer of the "insulting or provoking" variety in Count 2, but this count was *nolle prosequi* on May 13, 2005 after he pleaded guilty to Count 1.

Looking at the charging document, and not at the factual nature of Spiller's conviction, we find that Spiller pleaded guilty to committing a battery that knowingly or intentionally caused bodily harm to the victim, which was properly considered as a second crime of violence for the purposes of applying the career offender

enhancement. Particularly, this is supported by the fact that Count 2, which Spiller did not plead guilty to in 2005, was actually the non-violent battery offense in the Illinois battery statute that Spiller now argues he pleaded guilty under. Therefore, based on the charging document, it would have been improper for Spiller's counsel to object during his sentencing hearing to his career offender designation because it is clear that Spiller was properly designated as a career offender based on his two prior violent felony convictions.

As for Spiller's ineffective assistance of appellate counsel claim in Ground One, he failed raise an argument concerning his career offender designation on direct appeal. Consequently, Spiller must show that the failure of his appellate counsel to raise an issue on direct appeal was objectively unreasonable and that the decision prejudiced Spiller in the sense that there is a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal. *Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000). If Spiller's appellate counsel contested his career offender designation on direct appeal, that argument would have been futile because the Court used its sentencing discretion when it imposed the sentence. Our reasoning above establishes that an argument based on his career offender designation on appeal would not have been meritorious. We find that Spiller's appellate representation was reasonable as she had "no duty to make a frivolous argument." *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005).

**II. Ground Two: Plea Negotiations**

In his petition, Spiller also argues that his counsel was deficient in advising him about her plea negotiations with the Government. Spiller fails to expound on this issue in his reply brief, but does contend that he was allegedly prejudiced because he would not have had to pay $200 in special assessment fees and would only have one conviction, instead of three, if he did not take his counsel's "erroneous advice."

As background, Spiller pleaded guilty with a plea declaration, not under the proposed plea agreement at issue. Before pleading guilty, the Government sent Spiller's counsel an email on July 30, 2012 with a proposed plea agreement for Spiller that had been reviewed and approved. On August 8, 2012, the Government emailed Spiller's counsel asking if she anticipated Spiller pleading guilty, and if so, whether it will be by agreement or a blind plea. Spiller's counsel responded, stating:

> Mr. Spiller has asked a great question and one that I cannot seem to answer for him: what exactly does he gain if he proceeds by plea agreement, as opposed to a blind plea. Is the government withdrawing the 851? Can you tell me one concession the government makes in the draft plea you sent over? I want to make sure I am not missing something.

The Government responded to the inquiry from Spiller's counsel that day, insisting that the Government would not be withdrawing "the 851 notice" and that the plea agreement "d[id] not offer a whole lot beyond a blind plea." The Government explained that the benefits of the plea agreement would be that it would dismiss two counts, saving Spiller $200 in special assessments, and Spiller would get the

recognition in the plea agreement that he would be entitled to acceptance of responsibility, imposing a two-level reduction in the offense level.

The Supreme Court has held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012). A defendant must "demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel" and must also show "a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. . ." *Id.* at 1409. "It is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.*; *see also Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) ("a defendant must show the outcome of the plea process would have been different with competent advice"). It is well-established that a district court's explanation of the sentencing process to a defendant during the defendant's plea colloquy removes any possible prejudice from counsel's advice on sentencing consequences. *United States v. Valdez*, 15 C 1466, 2015 WL 1811640, at *2 (N.D. Ill. Apr. 17, 2015) (citing cases).

What Spiller focuses on in his petition is that his counsel told him if he pleaded "pursuant to a 'plea declaration' that his sentence would be 'more favorable' and he would have received a 'better sentence.'" Further, Spiller accuses his counsel of

failing to be "sufficiently aware of the facts and law," which caused him to be exposed to greater criminal liability. The Government is correct that since the plea agreement did not contain a fixed expiration date on it, it was not technically a formal plea offer. *Frye*, 132 S.Ct. at 1408; *see also Meschino v. United States*, 12 C 8519, 2013 WL 1707959, at *2 (N.D. Ill. Apr. 19, 2013) (where the court found that "[t]he *Frye* Court determined that a formal offer is one with "a fixed expiration date.' "). The plea agreement tendered by the Government was merely a draft agreement to facilitate plea discussions, and based on the email correspondence, Spiller's counsel clearly discussed the plea agreement with Spiller prior to rejecting it. Therefore, Spiller's arguments are inapposite.

Considering any prejudice Spiller experienced from not pleading guilty under the proposed plea agreement, we find that Spiller understood and was properly notified by the Court of the sentencing process and that under oath, he voluntarily pleaded guilty to all three counts. Spiller has failed to prove that he was prejudiced as a result of his counsel's representation during plea negotiations or when he pleaded guilty pursuant to a plea declaration. The record indicates that under the plea declaration, Spiller reserved the right to contest the Guideline range advanced by the Government and did not consent to the plea terms proposed by the Government, most importantly the application of the career offender Guidelines. By pleading guilty under the plea declaration, Spiller was afforded the opportunity to argue that he should not be considered a career offender. If Spiller pleaded under the proposed plea

14

agreement, the anticipated Guideline range would have been set at 262 to 327 months in prison, the Government could have recommended whatever sentence it deemed appropriate, including the statutory maximum of life imprisonment, and Spiller could not have argued against the career offender status. After assessing what Spiller was allowed to argue during his sentencing hearing by choosing to plead guilty under the plea declaration, we do not find that the $200 Spiller would have saved on special assessments and the two less convictions on his record prejudiced him to the point where his case would have been more favorable had he entered into the proposed plea agreement with the Government. By advising Spiller to plead guilty under the plea declaration, as opposed to the proposed plea agreement, Spiller's counsel was able to freely argue on Spiller's behalf, avoiding the restrictions outlined in the proposed plea agreement.

The Court agrees with the Government in its email exchange with Spiller's counsel that the "plea agreement d[id] not offer a whole lot beyond a blind plea" and during the sentencing, the Government still chose to argue for the Guideline range it referenced to in the plea agreement. Ultimately, however, the Court chose to give Spiller a below-Guideline sentence "in major recognition of the nature of the crime, and the crack/powder disparity. . .". With a lack of sufficient evidence beyond the conclusory allegations in his bare-boned petition, Spiller has not sufficiently shown that there is a reasonable possibility that he would have accepted the plea agreement, that the Court would have accepted its terms, and that his sentence would have been

less severe than the one actually imposed. Thus, under the terms of the draft plea agreement, Spiller cannot show that he was prejudiced by pleading guilty pursuant to a plea declaration. The Court holds that Spiller's counsel performed competently throughout his proceedings, including during plea negotiations, sentencing, and on direct appeal, by utilizing sufficient professional judgment and knowledge of the relevant law and facts.

### III. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the Court turns to whether a certificate of appealability should be issued. Under 28 U.S.C. § 2253(c)(2), "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2)[t]he certificate must identify each substantial constitutional question; (3)[i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4)[a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5)[i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis v.*

*Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003). Thus, the Court must determine whether to grant Spiller's certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

Based on the reasons stated in this opinion, Spiller has not established that jurists of reason could debate that the Court should have resolved his claims in a different manner or that his petition adequately shows a sufficient charge of the denial of a constitutional right so much so that he deserves encouragement to proceed further. Also, the Court does not find that jurists of reason would debate the Court's above-mentioned conclusions. As such, the Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the foregoing reasons, the Court denies Spiller's petition for a writ of habeas corpus and declines to issue a certificate of appealability.

_____
Charles P. Kocoras
United States District Judge

Dated: 5/14/2015